**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>               Plaintiff, )<br>v.                         )<br>                          )<br>MICHAEL R. VALENTINE, )<br>               Defendant. ) | No. 08-10196-01<br>No. 10-1068-MLB |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendant's pro se motion pursuant to 28 U.S.C. § 2255 (Docs. 14 and 15); and

2. Government's response (Doc. 17).

Defendant has not filed a reply.

The government has accurately summarized the facts in its response and the attachments thereto. The court generally adopts the government's response. However, the court is compelled to make additional observations.

## Background

Over the years, this court has observed that far too many defendants experience "buyer's remorse" after they enter the penitentiary which they express by filing motions pursuant to 28 U.S.C. § 2255, this despite unequivocal waivers contained in plea agreements. Fed. R. Civ. P. 60(b) also has come into vogue along with, to a lesser extent, futile applications under the All Writs Act, 28 U.S.C. § 1651. The vast majority of defendants' post-conviction

efforts are not successful and many are completely frivolous, which is the case here. All, however, take up this court's time and, with apparently increasing regularity given the number of denials of applications for certificates of appealability, the judicial resources of the Tenth Circuit.

In an effort to minimize, if not eliminate, post-conviction actions, the judges of this court and the undersigned in particular have adopted certain procedures. The judges have utilized written plea agreements and petitions to enter a guilty plea for many years. The contents of these documents have been modified as necessary; for example, by what is now a standard paragraph waiving appellate and post-conviction remedy rights. Thankfully, the Tenth Circuit has come to recognize and enforce written waivers of appellate and post-conviction remedy rights which, of course, helps the Tenth Circuit's caseload. It has not done much to help this court's, however.

The judges of this court endeavor to make a complete record when taking a defendant's plea, especially to insure that the defendant understands the terms and consequences of the plea agreement, the petition, his rights in connection with a trial and the rights he is giving up by entering a plea of guilty. Several years ago, primarily in response to untruthful claims by defendants that they had not been advised by their lawyer of their right to appeal and/or that their lawyer had ignored their instructions to appeal, the undersigned instituted voluntary use of a waiver of appeal form which is attached to government's response as Exhibit 6.

### Events in this Court

Turning to this case, the transcript of the plea hearing reflects

that in 2008, defendant was 39 years old with a high school education. He was no stranger to the criminal judicial system, having previously been convicted in this court of being a felon in possession of a firearm, the identical offense to which he was pleading guilty. As the relevant contents of the presentence report demonstrate, defendant has a long history of serious crimes placing him in criminal history category VI (Gov. Ex. 4). In other words, defendant was no frightened kid in an unfamiliar environment answering to his first offense. Defendant was represented by a highly experienced federal public defender; indeed, the same public defender who had represented him in his 1992 case in this court. So not only was defendant in familiar surroundings and circumstances, he was familiar with his attorney. As of December 2008, both defendant's counsel and government's counsel had appeared before the undersigned in hundreds of cases involving both trials and guilty pleas. Counsel were familiar with the rules of criminal procedure pertaining to guilty pleas as well as this court's procedures in that regard.

As the transcript of the plea hearing demonstrates, the court carefully and thoroughly covered with defendant the plea agreement, the petition, his rights in connection with a trial and the rights he was giving up by entering a plea. At no time did defendant express any lack of understanding; on the contrary, he uniformly indicated that he understood the court's explanations. Defendant now claims that "the Government and Trial Counsel both specifically assured this Petitioner that by entering the plea he would only receive a 77-month sentence of imprisonment" and that counsel was ineffective because he did not object to the 96-month sentence imposed. (Doc. 15 at 5).

-3-

There is absolutely nothing in the record to support this claim which, of course, is a lie. In those circumstances when the government and defendant agree to a sentence, the plea agreements utilized in this court <u>specifically</u> state that the agreement is being made pursuant to Rule 11(c)(1)(C). In such cases, the court's explanation to the defendant regarding the plea agreement is much different than what occurred in this case. Without question, defendant's plea was <u>not</u> pursuant to Rule 11(c)(1)(C).

Paragraph 5 of the plea agreement and paragraph 16 of the petition clearly set forth the defendant's understanding that the sentence will be up to the court and that the government has made no promises regarding a particular sentence. The government agreed to recommend a sentence at the low end of the applicable guideline range but as the court told defendant: "I can't tell you whether I'll go along with any of the other recommendations" other than credit for acceptance of responsibility (which defendant received) (Gov. Ex. 3 at 7). By no stretch of imagination could defendant have believed that he was pleading guilty to a 77-month prison term.

After defendant's plea, a presentence report was prepared. The report set out a guideline range of 77 to 96 months (Gov. Ex. 4, § 77) to which there was no objection. At the sentencing hearing, the court expressly determined from defendant that he had reviewed the presentence report, discussed it with his counsel and that there was nothing in the report that he wanted to change or correct (Gov. Ex. 5 at 2). Later in the sentencing hearing, the court asked defendant if he wished to speak to which he responded "I say he's (his counsel) absolutely correct." <u>Id.</u> at 5. The court then imposed a 96-month

-4-

sentence, the top of the guidelines, and advised defendant that to the extent he had not waived his right to appeal in the plea agreement he could do so. The court specifically stated: "Mr. Gradert will advise you about (an appeal). If you don't want to appeal, there's a form that he'll go over with you. Do you have any questions?" Given what he says in his motion, it seems reasonable that defendant would have responded: "Wait a minute. I was promised a 77-month sentence." Instead, defendant responded "No sir." Id. at 11.

After the sentencing hearing, defendant executed the appeal waiver (Gov. Ex. 6, Doc. 13). It is more than a little significant that defendant did not mention the appeal waiver in his motion. Instead, defendant claims that his counsel was ineffective because he did not follow defendant's instructions to pursue an appeal. Defendant's counsel has prepared an affidavit which refutes each of defendant's claims. Again, it is highly significant that defendant has not replied to counsel's affidavit.

## Discussion

Defendant does not claim that he did not understand the waiver provision in the plea agreement, nor can he in light of the record. Like many before him, defendant might have attempted to avoid the waiver provision by trying to fit his claim within the narrow exception offered by United States v. Cockerham, 237 F.3d 1170 (10th Cir. 2001). He does not mention Cockerham, even though it is expressly cited in the plea agreement's waiver provisions. In any event, Cockerham really isn't applicable because defendant is not complaining that counsel was ineffective " . . . in negotiating or entering the plea or the waiver." Id. at 1187. So, was counsel

-5-

ineffective when he did not object to the 96-month sentence? Obviously not, because there was never an agreement to any specific sentence, much less a 77-month sentence.

This leaves only one issue: was counsel ineffective for failing to appeal? This question is answered in United States v. Garrett, 402 F.3d 1262, 1265 (10th Cir. 2005):

> The Supreme Court has provided bright-line rules for evaluating an ineffective-assistance claim based on the performance of an attorney who has consulted with a criminal defendant about an appeal. Roe v. Flores-Ortega, 528 U.S. at 477-78, 120 S.Ct. 1029. A defendant who explicitly instructs his attorney "not to file an appeal cannot later complain that, by following his instructions, his counsel performed deficiently." Id. at 477, 120 S.Ct. 1029.

(Footnote omitted.) This is precisely what occurred in this case.

Accordingly, the court determines that the files and records conclusively show that defendant is entitled to no relief. His motion is denied.

### Recommendation

The court recommends that the U.S. Attorney consider an investigation to determine whether charges should be brought against defendant and the women who supplied affidavits in support of defendant's motion for violations of 18 U.S.C. § 1001.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __24th__ day of June 2010, at Wichita, Kansas.

>s/ Monti Belot
>Monti L. Belot
>UNITED STATES DISTRICT JUDGE